UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 21-30001-MGM |
| v. | |
| MICHAEL GEOFFROY | |

**OPPOSITION TO MOTION FOR CLARIFICATION AND TO RECONSIDER PRETRIAL DETENTION ORDER**

The United States of America, by and through its attorneys, opposes the defendant's motion to reconsider the pretrial detention order entered by the Court in this case.

1. No-Contact Order: the government does not oppose lifting the no-contact order as it relates to the defendant's wife, as she has expressed a desire to have contact with him.

2. Detention Order

In his argument for reconsideration, the defendant adopts a divide-and-conquer strategy that attempts to de-contextualize and isolate the statutory factors in 18 U.S.C. § 3142(g). The result is that the Court is being asked to ignore the elephant in the room: very strong evidence shows that the defendant committed one of the most serious crimes that can come before this Court. The defendant could spend the rest of his life in prison if convicted.

   a. Risk of Flight

On January 14, 2021, in a similar case, this Court sentenced 46-year old Anthony Deordio (18-cr-30056-MGM) to 720 months in prison for having committed almost exactly the same crimes as Mr. Geoffroy, including the lead charge in this indictment, Sexual Exploitation of a Child. Mr. Deordio had been previously convicted of possession of child pornography, and he had been convicted of a number of other crimes that had all resulted in light sentences.

However, the overriding factor that drove the long sentence was the defendant's offense conduct, which is similar to the conduct of Mr. Geoffroy. In addition, long sentences like the one given to Mr. Deordio are consistent with the Sentencing Guidelines, and are hardly aberrations, as the attached chart of cases nationwide show. The government's preliminary guidelines calculation give Mr. Geoffroy a guidelines range of 360 months to life (offense level 42 / criminal history category I).

While the Court did not find that the defendant posed a risk of flight due to his community ties, the defendant poses a serious risk of flight because he faces a very high mandatory minimum sentence and an extremely high advisory guidelines range. The severity of punishment is a factor this Court must consider in assessing the defendant's risk of flight. *United States v. Castiello*, 878 F.2d 554 (1st Cir. 1989). Given the weight of the evidence amassed against him, the statutorily mandated incarceration period, and the high advisory guidelines range, the defendant may well view flight as his only option to avoid a lengthy federal prison sentence. Under these circumstances, it is hard to see how it would be rational to do anything but flee.

While the defendant has cited his ties to community, those ties speak to the defendant's inclination to stay in the area *in the absence of any charges against him*. It may be true that the defendant, prior to being charged, had no reason to relocate, but that misses the point. Now that that he has been charged with such serious crimes, any existence outside the specter of a lengthy sentence will be more appealing than remaining in the area.

Ties to the community have particular relevance when the charges are unlikely to lead much, if any, jail time. In those cases, factors other than the defendant's criminal case are apt to be nearly as important in whether the defendant is likely to leave or to remain as they were

before the onset of the criminal case.  By contrast, in cases like the one against Mr. Geoffroy, the potential punishment from the criminal case dwarfs other considerations.  Here, it only common sense that this potential punishment is in the forefront of the defendant's thoughts.  The incentive to leave can be thought of as the likelihood of conviction (i.e., strength of the evidence) multiplied by the amount of expected punishment.  To brush that aside and to focus on the defendant's reasons to stay, as if no criminal case existed, is to ignore the practical reality of the situation.

An illustration of this compelling incentive to flee is demonstrated by a recent case before this Court.  In *United States v. Jeffrey Petryk*, 16-cr-30039-MGM, the defendant was charged with distribution, receipt, and possession of child pornography.  The U.S. Attorney's Office adopted a state prosecution charging him with similar offenses by obtaining his indictment on September 22, 2016.  On September 27, 2016, a summons was issued for him to appear for an initial appearance. The defendant learned about the potential penalties in his federal case, which involved a five-year mandatory minimum sentence, and he fled and did not appear for his initial appearance.  Since October 17, 2016, an arrest warrant has been outstanding.  Here, the incentive to flee is much greater for Mr. Geoffroy than it was for Mr. Petryk.

2. Danger to the Community

Mr. Geoffroy, in countering the Court's finding with respect to dangerousness, takes issue with the weight accorded to the "nature and circumstances of the offense charged, including whether the offense is a crime of violence," which is the first factor under 18 U.S.C. § 3142(g)(1). The defendant has been charged with crimes deemed by Congress to be crimes of violence because 18 U.S.C. § 1591 is a felony under chapter 110.  *See* 18 U.S.C. § 3156(4)(C) ("crimes of violence" includes any felony under chapter . . . 110).

Congress has decided that the instant offenses give rise to a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(E).  Congress has also decided that these offenses are worthy of 15-year mandatory terms of imprisonment.  By enacting these statutory provisions, the elected representatives of the United States could scarcely have spoken more directly or more forcefully about the seriousness of these offenses.  In doing so, Congress may have heeded Nelson Mandela's belief that "[t]here can be no keener revelation of a society's soul than the way in which it treats its children." Nelson Mandela, President, South Africa, Launch of the Nelson Mandela Children's Fund (May 8, 1995).

It is telling that Mr. Geoffroy makes no attempt to describe or to address the circumstances of the instant offenses.  The motion to reconsider reduces the charged offenses to mere abstractions, i.e., titles and section in the U.S. Code, indistinguishable from all other offenses.  To do otherwise would be to acknowledge the strong evidence that the defendant not only used a particularly vulnerable child to produce child pornography, but that he did so to disseminate it on the internet.  Having disseminated it, the defendant has perpetrated lifelong harm to the victim.  Even more disturbingly, the evidence shows that the defendant, by his explicit words, desires to have sex with a child.

Mr. Geoffroy also diminishes the fact that he could commit more child pornography offenses simply by purchasing or otherwise obtaining a ubiquitous smart phone and gaining access to the internet.  Mr. Geoffroy could easily gain access again to the same kind of internet groups he frequented before, the groups devoted to sharing child pornography and discussing the sexual abuse of children.  The motion to reconsider puts that concern to the side by observing that the same could be said for *any* internet-based offenses.  Motion at 4.  In making this observation, Mr. Geoffroy again deflects the thrust of the government's and the Court's

4

concerns. Mr. Geoffroy is not accused of using the internet to defraud people, or of using the internet to sell marijuana. In those cases, the harm from re-offense can be counteracted, and the harm is not so indelible as the harm Mr. Geoffroy could cause by repeating his offense conduct.

The defendant's motion argues that the risk of the defendant committing hands-on child sexual abuse offenses is "speculative." Again, this assertion leaves aside the harm caused by receiving and disseminating child pornography. But even on its terms, the argument fails to grapple with the defendant's specific, unmistakable words in the group messages where he expressed an insatiable desire to have sex with a child. The images produced by the defendant show that he acted on this desire. Are we to believe that this urge has suddenly been eliminated? Has the defendant acknowledged that he has a problem? Has he committed to a treatment regimen? Has he completed a comprehensive treatment plan? Has a mental health professional deemed his treatment to be a success? None of these questions can be answered in the affirmative. The fact that they cannot be so answered indicates that the defendant remains as much of a danger to children as he was when he was arrested.

The defendant disparages the view of DCF, who speaks for the victim, by calling their position against release "hardly surprising." Motion at 5. The defendant goes further and contends that DCF's view "should be afforded little or no weight." *Id.* In other words, the defendant argues that a state agency whose very purpose is to protect the welfare of children has no credibility on the subject of the welfare of children. While DCF's position is not dispositive, it is unclear who the Court should be listening to, if it should not be listening to DCF.

Conclusion

The motion to reconsider pretrial detention should be denied.

                        Respectfully submitted,

                        ANDREW E. LELLING
                        United States Attorney

          By:      */s/ Alex J. Grant*
                        ALEX J. GRANT
                        Assistant U.S. Attorney

Dated: January 17, 2021

## Certificate of Service

    I, Alex J. Grant, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                        */s/ Alex J. Grant*
                        ALEX J. GRANT
                        Assistant U.S. Attorney